## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MARK POST, an individual; and
MT DANK TANK, LLC.    )
an Oklahoma limited liability company,    )
                                           )
                                           )
              Plaintiffs,    )    Civil Action No. CIV-22-967-HE
                                           )
   vs.    )
                                           )
BRANDI JO CHRISTIAN, an individual; and    )
BRANDI JO ENTERPRISES, INC.    )
an Oklahoma corporation; and    )
                                           )
                                           )
             Defendants.    )

## PLAINTIFF MT DANK TANK, LLC'S
## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT

Evan W. Talley, OBA NO. 22923
Elizabeth L. Isaac, OBA NO. 31618
**DUNLAP CODDING PC**
609 West Sheridan Ave.
Oklahoma City, OK 73102
Telephone:   (405) 607-8600
Facsimile:   (405) 607-8686

**ATTORNEY FOR PLAINTIFFS
MT DANK TANK, LLC. AND
MARK POST**

November 23, 2022

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................iv

INTRODUCTION AND BACKGROUND.................................................................................1

SPECIFIC FACTS SUPPORTING REQUEST FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION..................................................................................................2

ARGUMENT AND AUTHORITIES .........................................................................................2

   I.   PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER PROHIBITING
      DEFENDANTS FROM CONTINUING TO INFRINGE UPON THEIR CONTRACTUAL AND
      INTELLECTUAL PROPERTY RIGHTS..........................................................................2

      A.  Plaintiff Mr. Post is Likely to Succeed on the Merits of His Copyright Infringement Claim.....3

         1.  Mark Post Owns a Valid Copyright in the Copyrighted Work ................................3

         2.  Defendants Have Unlawfully Copied the Copyrighted Work Without Authorization .........4

            a.  Access...........................................................................................................4

            b.  Probative Similarity.......................................................................................7

            c.  Substantial Similarity ....................................................................................7

      B.  Plaintiffs Are Likely to Succeed on the Merits of their Breach of Contract Claim. ...................9

         1.  Defendants' Infringement of the DANK TANK Mark and Unauthorized Use of the Dank
            Tank Logo. ...............................................................................................10

         2.  Defendants' Disparaging Conduct .......................................................................11

      C.  Plaintiffs Are Likely to Succeed on the Merits of its Common Law Trademark Infringement
        Claim.............................................................................................................13

         1.  Plaintiffs Own a Protectable Interest in the DANK TANK Mark .......................13

         2.  Defendants Made Unauthorized Use of the DANK TANK Mark in Commerce. .............14

         3.  Defendants' Unauthorized Use of the DANK TANK Mark Threatens a Likelihood of
            Consumer Confusion. ...............................................................................16

            a.  Similarity Between the Marks .....................................................................17

            b.  Defendants' Intent .......................................................................................17

        c.    Evidence of Actual Confusion ........................................................................ 18

        d.    Similarity of the Goods and Services Provided Under the Marks-at-Issue and Manner of Marketing ............................................................... 19

        e.    Degree of Care Exercised by Purchasers .................................................... 20

        f.    Strength of the DANK TANK Mark ........................................................... 21

   D.  Plaintiffs Will Be Irreparably Harmed If Defendants Are Not Enjoined.................................. 23

     1.  Copyright Infringement Claim ................................................................................ 23

     2.  Common Law Trademark Infringement Claim ........................................................ 26

     3.  Breach of Contract Claim ....................................................................................... 27

   E.  The Balance of Equities Favor Granting Plaintiffs Injunctive Relief ........................................ 28

   F.  The Public Interest Is Best Served by Enjoining Defendants' Unlawful Conduct ................... 28

BOND ............................................................................................................................................. 30

CONCLUSION ............................................................................................................................... 30

## TABLE OF AUTHORITIES

Page(s)

Cases

*Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*,
   994 F.2d 1476 (10th Cir. 1993)..................................................................29

*Beer Nuts, Inc. v. Clover Club Foods Co.*,
   711 F.2d 934 (10th Cir. 1983)........................................................17, 20, 21

*Bethesda Softworks, L.L.C. v. Interplay Entertainment Corp.*,
   452 Fed. Appx. 351 (4th Cir. Oct. 26, 2011) ...............................................24

*Blehm v. Jacobs*,
   702 F.3d 1193 (10th Cir. 2012).......................................................................8

*Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*,
   383 F.3d 110 (3rd Cir. 2004) .......................................................................29

*Civility Experts Worldwide v. Molly Manners, LLC*,
   167 F. Supp. 3d 1179 (D. Colo. 2016) ...........................................................7

*CommuntityCare HMO, Inc. v. MemberHealth, Inc.*,
   No. 06-CV-197-TCK-SAJ, 2006 WL 6130987 (N.D. Okla. May 8, 2006) ......26, 27, 28

*Country Kids 'N City Slicks, Inc. v. Sheen*,
   77 F.3d 1280 (10th Cir. 1996).............................................................7, 8, 23

*CoxCom, Inc. v. Chaffee*,
   536 F.3d 101 (1st Cir. 2008) ........................................................................24

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,
   269 F.3d 1149 (10th Cir. 2001).................................................................3, 24

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
   356 F.3d 1256 (10th Cir. 2004)................................................................25, 27

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ....................................................................................3, 8

iv

*First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*,
   101 F.3d 645 (10th Cir. 1996)..................................................................21, 22

*Flava Works, Inc. v. Gunter*,
   689 F.3d 754 (7th Cir. 2012)...........................................................................24

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*,
   9 F.3d 823 (10th Cir. 1993).............................................................................4

*Greater Yellowstone v. Flowers*,
   321 F.3d 1250 (10th Cir. 2003)......................................................................23

*Heartsprings, Inc. v. Heartspring, Inc.*,
   143 F.3d 550 (10th Cir. 1998)...........................................................17, 19, 21

*Hetronic Int'l, Inc. v. Hetronic Germany GmbH*,
   No. CIV-14-650-F, 2020 WL 2119831 (W.D. Okla. May 4, 2020)..............29

*King of the Mountain Sports, Inc. v. Chrysler Corp.*,
   185 F.3d 1084 (10th Cir. 1999)......................................................................21

*La Resolana Architects, PA v. Reno, Inc.*,
   555 F.3d 1171 (10th Cir. 2009).....................................................................5, 6

*Lundgrin v. Claytor*,
   619 F.2d 61 (10th Cir. 1980)............................................................................3

*Mail Boxes Etc., Inc. v. CMS Enterprises, Inc.*,
   No. CIV-06-130-L, 2006 WL 469648 (W.D. Okla. Feb. 27, 2006)...............2

*N. Am. Ins. Agency, Inc. v. Bates*, No. CIV-1,
   2-544-M, 2014 WL 3810534 (W.D. Okla. Aug. 1, 2014).......................13, 14

*Nat'l Ass'n of Forensic Couns., Inc. v. Narconon Int'l*,
   No. CIV-14-187-RAW, 2015 WL 5157538 (E.D. Okla. Sept. 2, 2015).......16

*Nebraska Consol. Mills Co. v. Shawnee Mill. Co.*,
   198 F.2d 36 (10th Cir. 1952)..........................................................................16

*Palladium Music, Inc. v. EatSleepMusic, Inc.*,
   398 F.3d 1193 (10th Cir. 2005)........................................................................4

*Perfect 10, Inc. v. Google, Inc.*,
   653 F.3d 976 (9th Cir. 2011) .......................................................................... 24

*Peter Letterese and Assocs., Inc. v. World Inst. of Scientology Enters.*,
   533 F.3d 1287 (11th Cir. 2008) ...................................................................... 24

*Retiree, Inc. v. Anspach*,
   No. 12-2079-JAR, 2013 WL 3820729 (D. Kan. July 23, 2013) ................... 25

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011) ..................................................................... 24

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010) ............................................................................ 24

*Sally Beauty Co. v. Beautyco, Inc.*,
   304 F.3d 964 (10th Cir. 2002) .................................................. 17, 18, 19, 20

*Savant Homes, Inc. v. Collins*,
   809 F.3d 1133 (10th Cir. 2016) ....................................................................... 3

*Sw. Stainless, LP v. Sappington*,
   582 F.3d 1176 (10th Cir. 2009) ..................................................................... 25

*TD Bank N.A. v. Hill*,
   928 F.3d 259 (3d Cir. 2019) .......................................................................... 24

*Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*,
   23 F.4th 1262 (10th Cir. 2022) ..................................................................... 23

*Terry v. Ely*,
   No. 19-CV-00990-PRW, 2020 WL 9074888 (W.D. Okla. Sept. 8, 2020) ... 10

*Textile Workers Union of Am. v. Lincoln Mills of Ala.*,
   353 U.S. 448 (1957) ...................................................................................... 29

## Statutes

15 U.S.C. § 501 .................................................................................................. 3
17 U.S.C. § 106 .................................................................................................. 4
17 U.S.C. § 410(c) ............................................................................................. 4
17 U.S.C. § 502(a) ............................................................................................. 3

Rules

Fed. R. Civ. P. 65........................................................................................... 1, 2

Other Authorities

Patry on Copyright § 9:72 ............................................................................. 8

Pursuant to Fed. R. Civ. P. 65, Plaintiffs Mark Post ("Mr. Post") and MT Dank Tank, LLC ("MT Dank Tank") (collectively "Plaintiffs") file this Motion for Temporary Restraining Order[1] and Preliminary Injunction and brief in support and states as follows:

## INTRODUCTION AND BACKGROUND

Plaintiffs seek, and should be granted, a temporary restraining order and preliminary injunction enjoining Defendants Brandi Jo Christian ("Ms. Christian") and Brandi Jo Enterprises, Inc. ("Brandi Jo Enterprises") (collectively "Defendants") from engaging in conduct infringing Mr. Post's copyright, from continued violations of contractual obligations contained in a Purchase Agreement entered into between MT Dank Tank and Brandi Jo Enterprises, and from engaging in conduct infringing MT Dank Tank's trademark rights. Plaintiffs have suffered, and will continue to suffer, irreparable harm due to Defendants' infringing and disparaging conduct. Mr. Post owns the copyright in a two-dimensional work of art, comprising a green-colored, stylized armored tank featuring a portion of a marijuana leaf and smoke clouds at the back-end of the tank (the "Copyrighted Work"), which he registered with the U.S. Copyright Office on May 31, 2022.

This motion for temporary restraining order is based on copyright infringement, breach of contract, and trademark infringement that has and will continue to cause

---

[1] Plaintiffs are not requesting that this Court issue a temporary restraining order without notice to Defendant Brandi Jo Enterprises, Inc. Pursuant to Fed. R. Civ. P. 65, Plaintiffs are providing notice of the Verified Complaint and this motion to Brandi Jo Enterprises' agent of record, Jack Wellborn, 2808 N. Windsor Pl., Oklahoma City, Oklahoma 73127, as well as providing notice to Brandi Jo Enterprises at its current business address at 307 S. 4th St., Sayre, Oklahoma 73662. Plaintiffs will also provide notice to Brandi Jo Enterprises in the same manner of any hearing the Court sets on this motion.

irreparable harm to Plaintiffs if not immediately enjoined. Mr. Post is the sole and exclusive owner of the Copyrighted Work. MT Dank is the exclusive licensee of the Copyrighted Work. Defendants are committing irreparably harming acts to Plaintiffs. Plaintiffs are entitled to an immediate restraining order or preliminary injunction.

**SPECIFIC FACTS SUPPORTING REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

For convenience, Plaintiffs adopt and incorporate herein by reference the Statement of Facts set forth in the Verified Complaint, *see* Dkt. No. 1, ¶¶ 10–75, and the concurrently-filed declaration of Mr. Post ("Post Decl.").

**ARGUMENT AND AUTHORITIES**

**I.  PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER PROHIBITING DEFENDANTS FROM CONTINUING TO INFRINGE UPON THEIR CONTRACTUAL AND INTELLECTUAL PROPERTY RIGHTS.**

Fed. R. Civ. P. 65 authorizes the Court to issue a temporary restraining order ("TRO") when it appears the movant is entitled to the relief demanded, and such relief consists of restraining an act the continuance of which would produce injury to the movant during the pendency of the litigation. A TRO-movant must establish: (1) a likelihood of success on the merits; (2) that irreparable injury will be suffered if the injunction is not granted; (3) that a balance of equities favors the relief; and (4) that the entry of relief would not be adverse to the public interest. *Mail Boxes Etc., Inc. v. CMS Enterprises, Inc.*, No. CIV-06-130-L, 2006 WL 469648, at *2 (W.D. Okla. Feb. 27, 2006) (citing *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir. 1980)).

2

These four factors are used to determine the propriety of a preliminary injunction to remain in place throughout the pendency of the litigation. *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.,* 269 F.3d 1149, 1154 (10th Cir. 2001). Injunctive relief is available to "prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Here, the four factors weigh strongly in favor of granting Plaintiff's requested injunctive relief.

### A.     Plaintiff Mr. Post is Likely to Succeed on the Merits of His Copyright Infringement Claim.

Plaintiffs' Verified Complaint asserts copyright infringement against Defendants. *See* 15 U.S.C. § 501. To establish a claim for copyright infringement, Plaintiffs must show: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1138 (10th Cir. 2016) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991)).

Mr. Post owns a valid copyright in the Copyrighted Work and can readily show that Defendants copied protectible elements of the Copyrighted Work.

### 1.     Mark Post Owns a Valid Copyright in the Copyrighted Work

Mr. Post is the exclusive owner of the Copyrighted Work that is attached to the Verified Complaint as Exhibit 1. *See* Dkt. No. 1-1. Mr. Post's highly creative artwork is an original work of authorship within the meaning of the Copyright Act, and has been registered with the U.S. Copyright Office. Dkt. No. 1-2. A certificate of registration issued before or within five years of the work's first publication constitutes *prima facie* evidence of the validity of the copyright. 17 U.S.C. § 410(c); *Palladium Music, Inc. v. EatSleepMusic, Inc*., 398 F.3d 1193, 1196 (10th Cir. 2005).

Mr. Post obtained a registration certificate from the U.S. Copyright Office for the Copyrighted Work on May 31, 2022. Thus, Mr. Post is entitled to a presumption of a valid copyright. Defendants now bear the burden to rebut that presumption. *See* 398 F.3d 1193 at 1196.

Mr. Post has the exclusive right to reproduce, create derivative works from, distribute, and publicly display his Copyrighted Work. *See* 17 U.S.C. § 106. Mr. Post granted MT Dank Tank an exclusive license for the Copyrighted Work, memorialized in a Copyright License Agreement. *See* Post Decl., at ¶ 7, Ex. 2 thereto.

Accordingly, Mr. Post has satisfied the first element to establish a claim for copyright infringement—that he owns a valid copyright.

### 2. Defendants Have Unlawfully Copied the Copyrighted Work Without Authorization

Defendants infringed Mr. Post's copyright by copying the Copyrighted Work. Copying may be established either through the "presentation of direct evidence, or through indirect evidence that shows (1) that the defendant had access to the copyrighted material, and (2) that there are probative similarities between the copyrighted material and the allegedly copied material." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993). Here, Defendants had access to the Copyrighted Work and copied Mr. Post's protected expression contained in the Copyrighted Work.

#### a) Access

Access may be established by "showing that the defendant had a reasonable opportunity to view or [an] opportunity to copy the allegedly infringed work.'" *La*

*Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1178 (10th Cir. 2009) (internal quotations omitted). There is abundant evidence to satisfy this element. Defendants had access to the Copyrighted Work since at least on our about December 3, 2020, when Mr. Post uploaded the Copyrighted Work to the Facebook Page associated with a dispensary located at 1301 S Rock Island Ave, El Reno, Oklahoma 73036 (the "Original El Reno Location").

Ms. Christian, Mr. Post, and Teri Figueroa conducted business as "Dank Tank" and opened the dispensary at the Original El Reno Location. Mr. Post authored and initially used the Copyrighted Work in connection with the promotion of the dispensary at the Original El Reno Location, which was substantially managed by Mr. Post. Subsequently, Defendants opened dispensary locations in Weatherford and Sayre ("Defendants' Weatherford Location" and "Defendants' Sayre Location," respectively). Although Plaintiffs were not directly associated with Defendants' Weatherford and Sayre operations, Mr. Post continued to control Dank Tank's branding and handled the social media presence for and uploaded his Copyrighted Work on the social media pages of Defendants' Weatherford Location and Defendants' Sayre Location.

Due to the business relationship between the parties, Defendants had full access to the Copyrighted Work. However, it was only after the execution of the Purchase Agreement between MT Dank Tank and Brandi Jo Enterprises—which ended the business relationship between Plaintiffs and Defendants—that Defendants saw fit to create a "derivative" work that copies the unique elements of Mr. Post's Copyrighted Works (the "Infringing Work"), as reproduced in Paragraph 47 of the Complaint.

As discussed above, Plaintiffs can readily establish access with, at worst, indirect evidence. Nonetheless, Plaintiffs are entitled to an inference of access.

Access may be inferred when the allegedly infringing material is "strikingly similar" to the copyrighted material. *See La Resolana Architects,* 555 F.3d at, 1179 . "Striking similarity exists when the proof of similarity in appearance is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Id.* (internal quotations omitted).

Here, the similarities between the Infringing Work and the Copyrighted Work are not merely coincidental. The Infringing Work contains every element of the Copyrighted Work, arranged in a nearly identical fashion.

The Infringing Work differs only minimally from the Copyrighted Work, as illustrated below:

| Plaintiffs' Copyrighted Work | Defendants' Infringing Work |
|---|---|
|  |  |

First, the Infringing Work includes the text "BRANDI/BARRY" superimposed over a portion of the artwork. Defendants also made slight modifications to some colors used in the Copyrighted Work. Particularly, Defendants changed the color of the tank tread from

brown to red, and likewise the marijuana leaf from green to red. Defendants also added two more red-colored marijuana leaves to the background. The striking similarities between the arrangement, coordination, and selection of elements of the Copyrighted Work and the Infringing Work leads to only one reasonable conclusion: Defendants must have had access to the Copyrighted Work.

<strong>b)      Probative Similarity</strong>

Probative similarity requires a showing that, as a factual matter, "it is more likely than not that the defendant copied from the plaintiff's work: 'similarities that, in the normal course of events, would not be expected to arise independently in the two works are probative of defendant's having copied as a factual matter from plaintiff's work.'" *Civility Experts Worldwide v. Molly Manners, LLC*, 167 F. Supp. 3d 1179, 1190 (D. Colo. 2016) (quoting 4-13 Nimmer on Copyright § 13.01[B]).

Here, the similarities between the Infringing Work and the Copyrighted Work are so striking as to preclude the possibility of independent creation.

<strong>c)      Substantial Similarity</strong>

Substantial similarity addresses the ultimate question on liability: "the question of whether Defendants infringed on Mr. Post's copyright turns on whether Defendants' product is substantially similar to the protectable elements of Plaintiff's product." *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996).

The substantial similarity inquiry first requires a determination of the protectible expression embodied in the work at issue. *See Blehm v. Jacobs*, 702 F.3d 1193, 1200 (10th Cir. 2012). As a graphic work, the Copyrighted Work's protected expression lies in the

7

original selection, coordination, and arrangement of elements found within the Copyrighted Work. *See* Feist, 499 U.S. at 362 (discussing protectability of original selection, coordination, and arrangement).

Next, the substantial similarity inquiry requires a comparison of Defendants' selection, coordination, and arrangement of the Infringing Work with Mr. Post's selection, coordination, and arrangement of the Copyrighted Work. *See id.* at 1202 (stating that the court must next "determine whether the protected elements are substantially similar to the accused work"). In the Tenth Circuit, courts apply the "ordinary observer" test to measure substantial similarity—i.e., "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Country Kids*, 77 F.3d at 1288 (internal quotations omitted); *see also id.* ("The touchstone of this analysis is the overall similarities rather than the minute differences between the two works") (internal quotations omitted); Patry on Copyright § 9:72 ("A compilation is infringed by a substantial copying of its selection, coordination, or arrangement, regardless of the unprotectibility of the constituent parts").

Applying the ordinary observer test, it is abundantly clear that the Infringing Work bears striking similarities to the Copyrighted Work. Most, if not all, of the elements in the Infringing Work embody the protected expression, composition, placement, and theme of the Copyrighted Work. At first blush, the Infringing Work appears nearly identical in all material respects to the Copyrighted Work. It is only upon closer examination that minor, immaterial differences be detected. The Copyrighted Work and the Infringing Work do not

merely coincidentally bear the same military tank in the same position, with the same plume of smoke emitting from the same location of the tank tread. Rather, Defendants copied the unique elements, selection, and placement employed by Mr. Post in the Copyrighted Work. The literal copying of Mr. Post's work is nowhere more evident than in the decal featured to the right of the tank, a miniature version of another original graphic illustration authored by Mr. Post.

Defendants have appropriated for their own commercial use Mr. Post's unique and creative selection and arrangement of the elements contained in the Copyrighted Work. Out of the innumerable ways to select and arrange elements of a business logo, Defendants chose to use the same theme, same graphics, same placement, and same arrangement. Instead of developing their own artwork for a business logo, Defendants created a facsimile of the Copyrighted Work.

Accordingly, Plaintiffs can readily establish that it is likely to succeed on the merits of a copyright infringement claim against Defendants.

**B.    Plaintiffs Are Likely to Succeed on the Merits of their Breach of Contract Claim.**

Plaintiffs' Verified Complaint asserts a claim of breach of contract against Defendants. To establish a claim for breach of contract, Plaintiffs must show: (1) the formation of a contract; (2) breach of that contract; and (3) damages as a direct result of the breach." *Terry v. Ely*, No. 19-CV-00990-PRW, 2020 WL 9074888, at *6 (W.D. Okla. Sept. 8, 2020). The breach element itself may be dispositive. *Id.*

By the terms of the Purchase Agreement, Mr. Post expressly reserved the "trademark of El Reno Dank Tank [the "DANK TANK mark"] which shall not be considered a part of this transaction. Brandi shall not use the Dank Tank trademarked logo for any other business, effective August 31, 2022." *See* Dkt. No. 1-3, at ¶ 5. In the Purchase Agreement, Defendants committed that, upon execution, Defendants would (i) respect the expressly reserved rights of Mr. Post in the DANK TANK mark; (ii) refrain from making use of the Dank Tank trademarked logo for any other business beyond August 31; and (i) refrain from making disparaging remarks concerning Plaintiffs. Defendants' disregard for their contractual obligations constitutes a deliberate and material breach of the Purchase Agreement.

### 1.     Defendants' Infringement of the DANK TANK Mark and Unauthorized Use of the Dank Tank Logo.

Paragraph 5 of the Purchase Agreement provides the following: (1) "Mark expressly reserved the trademark of El Reno Dank Tank which shall not be considered a part of this transaction"; and (2) "Brandi shall not use the Dank Tank trademarked logo for any other business, effective August 31, 2022."  *See* Dkt. No. 1-3.

As discussed, *infra*, Defendants have made and, unless enjoined, will continue to make unauthorized use of the DANK TANK mark and associated logo in connection with Defendants' dispensary operations, in clear violation of the terms of the Purchase Agreement.

2.      **Defendants' Disparaging Conduct**

Paragraph 4 of the Purchase Agreement states: "Each Party agrees and covenants that neither Party shall at any time make, publish, or communicate to any person or entity or in any public forum any defamatory or maliciously false, or disparaging remarks, comments, or statements concerning the other Party." *See* Dkt. No. 1-3.

After the execution of the Purchase Agreement, on October 26, 2022, Defendants published and publicly displayed the imagery, shown below, on the Facebook page associated with Defendants' dispensary, Brandi-Barry Dank Tank, located at 1925 E Hwy 66 El Reno, Oklahoma 73036 ("Defendants' First El Reno Location"):



[Dkt. No. 1, ¶ 71].

The image includes a sign that reads, "F*CK MT," a clear reference to MT Dank Tank. The picture featured in the October 26, 2022 Facebook post is presumably publicly displayed inside Defendants' First El Reno Location. The statement "F*CK MT" casts Plaintiffs in a negative light and detracts from their reputation, in violation of the Mutual Non-Disparagement provision of the Purchase Agreement.

11

The abovementioned picture was reproduced from a mural presently on public display at Defendants' Sayre Location, as shown below.



[Dkt. No. 1, ¶ 72].

On October 15, 2022, Defendants published another image including the wording "F*CK MT" on Defendants' Instagram page associated with Defendants' dispensary located at 421 West Gray St., Norman, Oklahoma 73069 ("Defendants' Norman Location"), as shown below. The picture was only the second post made on Defendants' Norman Location's Instagram page.



[Dkt. No. 1, ¶ 74].

Unless and until enjoined, Defendants will continue to make disparaging statements concerning Plaintiffs, in violation of their contractual obligations, and at the detriment of Plaintiffs' reputation and goodwill.

Based on the facts, along with the well-recorded instances of Defendants' unauthorized use of the DANK TANK mark and Dank Tank logo and disparaging statements, Plaintiffs are likely to succeed on the merits of their breach of contract claim.

### C.   Plaintiffs Are Likely to Succeed on the Merits of its Common Law Trademark Infringement Claim.

Plaintiffs' Verified Complaint asserts a claim of common law trademark infringement against Defendants. "The elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act." *N. Am. Ins. Agency, Inc. v. Bates*, No. CIV-12-544-M, 2014 WL 3810534, at *5 (W.D. Okla. Aug. 1, 2014). To establish a claim for common law trademark infringement, Plaintiffs must show: (1) a protectable interest in the mark; (2) defendants' use of that mark in commerce; and (3) the likelihood of consumer confusion. *See id.* Plaintiffs own a protectable interest in the DANK TANK mark and can readily show that Defendants used the mark in commerce, creating a likelihood of consumer confusion.

#### 1.   Plaintiffs Own a Protectable Interest in the DANK TANK Mark

Plaintiffs have a clearly protectable interest in the DANK TANK mark. Plaintiffs controlled the use of and/or made continuous, public use and/or excusable nonuse of the

DANK TANK mark for the purpose of identifying regulated cannabis products to the public since November 9, 2020. Dkt. No. 1, ¶ 16.

Moreover, Defendants acknowledged that Plaintiffs own a protectable interest in the DANK TANK mark, as evidenced by a Purchase Agreement entered into between the parties.   (Dkt. No. 1, ¶ 37). The Purchase Agreement clearly contemplates that, at all relevant times, the DANK TANK mark was owned by Mr. Post:

> EL RENO DANK TANK TRADEMARK: Mark expressly reserved the trademark of El Reno Dank Tank which shall not be considered a part of this transaction. **Brandi shall not use the Dank Tank trademarked logo for any other business**, effective August 31, 2022.

[Dkt. No. 1-3,  ¶ 5 (emphasis added)].

The terms of the Purchase Agreement clearly indicate a legally enforceable interest in the DANK TANK mark in favor of Plaintiffs, and to the exclusion of all others, particularly Defendants.

## 2.    Defendants Made Unauthorized Use of the DANK TANK Mark in Commerce.

Defendants have and continue to use the DANK TANK mark in commerce, without authorization from Plaintiffs, including in association with Defendants' First El Reno Location, Defendants' Weatherford Location, Defendants' Sayre Location, Defendant's Norman Location, and Defendants' planned dispensary located at at 312 W. Elm St., El Reno, Oklahoma 73036 ("Defendants' Second El Reno Location"), less than a half-mile from MT Dank Tank's Original El Reno Location.

Defendants' business social media accounts are littered with instances of Defendants' unlawful use of Plaintiffs' DANK TANK mark. For example, Defendants posted the message shown below to the Facebook page of Defendants' First El Reno Location—a competing dispensary opened in El Reno by Defendants following the cessation of its business relationship with Plaintiffs:



[Dkt. No. 1, ¶ 67]. The message states, in part, "Brandi barry dank tank! Is THE DANK TANK since we have been in town!" *Id.* Notably, Defendants place the phrase "DANK TANK" in all capital letters. Similarly, the phrase "DANK TANK" in the title of Defendants' Facebook page is also in all capital letters.

Defendants employ the same scheme with their physical promotional material. Defendants are presently advertising Defendants' Sayre Location as simply: "Dank Tank Dispensary," as shown below.



[Dkt No. 1, ¶ 59]. In an obvious attempt to trade off of the goodwill associated with Plaintiffs' DANK TANK mark, Defendants are using the DANK TANK mark to sell regulated cannabis products in direct competition with Plaintiffs

### 3.    Defendants' Unauthorized Use of the DANK TANK Mark Threatens a Likelihood of Consumer Confusion.

Under Oklahoma law, trademark infringement occurs when "the ordinary buyer, exercising ordinary intelligence and observation in business matters, will certainly or probably be deceived." *Nebraska Consol. Mills Co. v. Shawnee Mill. Co*., 198 F.2d 36, 38 (10th Cir. 1952). The elements of common law trademark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act. *See Nat'l Ass'n of Forensic Couns., Inc. v. Narconon Int'l,* No. CIV-14-187-RAW, 2015 WL 5157538, at *7 (E.D. Okla. Sept. 2, 2015).

The Tenth Circuit uses the following six factors to determine whether there is a likelihood of confusion exists between marks: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely

to be exercised by purchasers; and (6) the strength or weakness of the marks. *Sally Beauty Co. v. Beautyco, Inc*., 304 F.3d 964, 972 (10th Cir. 2002)

### a)      Similarity Between the Marks

"The similarity of the marks factor constitutes the heart of our analysis." *Heartsprings, Inc. v. Heartspring, Inc*., 143 F.3d 550, 554 (10th Cir. 1998). The degree of similarity between the marks is tested on three levels: sight, sound, and meaning. *See Sally Beauty*, 304 F.3d at 972.

In this case, Defendants misappropriated the DANK TANK mark wholesale. As such, there is no difference in sight, sound, or meaning between the marks at issue. Therefore, this factor weighs heavily in favor of Plaintiffs.

### b)      Defendants' Intent

"Proof that a defendant chose a mark with the intent of copying the plaintiff's mark may, standing alone, justify an inference of likelihood of confusion." *Id.* at 973 (citing *Beer Nuts, Inc. v. Clover Club Foods Co*., 711 F.2d 934, 941 (10th Cir. 1983). A defendant's intent in adopting a mark is a critical factor, as explained by the Tenth Circuit in *Beer Nuts*, "[o]ne who adopts a mark similar to another already established in the marketplace does so at his peril, because the court presumes that he can accomplish his purpose: that is, that the public will be deceived. All doubts must be resolved against him." 711 F.2d at 941 (internal citations and quotation omitted).

Here, Defendants' intent in adopting the DANK TANK mark is clear: to illicitly derive benefit from Plaintiffs' established goodwill. Defendants were well aware of the strong association that the relevant consuming public had with the DANK TANK mark

and Plaintiffs' dispensary as a result of Mr. Post's management of the Original El Reno Location. Defendants' awareness of the DANK TANK mark is further evidenced by the fact that Defendants entered into a Purchasing Agreement with Plaintiffs that explicitly made reference to Plaintiffs' continued ownership of the DANK TANK mark. Where, as here, a former business partner and now direct competitor continues to use the trademark owner's trademarks following the execution of an agreement terminating all business relationships and attendant rights—intent to copy could not be clearer. This factor also weighs heavily in favor of Plaintiffs.

### c)    Evidence of Actual Confusion

"Although not necessary to prevail on a trademark infringement claim, evidence of actual confusion in the marketplace may be the best indication of likelihood of confusion." *Sally Beauty*, 304 F.3d at 974. In this case, Defendants have publicly admitted to the existence of actual confusion in the marketplace. Defendants posted the following message on the Facebook page associated with Defendants' First El Reno dispensary location on November 21, 2022:



[Post Decl., at ¶ 5, Ex. 1 thereto]. In the Facebook post, Defendants state: "For those of you who have been asking we ARE NOT GOING ANYWHERE! And this is not Brandi & Barry DANK TANK Elreno in the old building!!!" The "old building" referred to in Defendants' post is the Original El Reno Location operated by Plaintiffs. Defendants' public response to inquiries concerning Defendants' affiliation with the Original El Reno Location indicates that customers are confused regarding the affiliation, connection, or association between the dispensaries operated by Plaintiffs and Defendants. This sort of confusion undermines the goodwill associated with Plaintiffs' DANK TANK mark. Nothing suggests that Defendants were prompted to issue such a statement for any reason other than to address actual confusion. Therefore, this factor weighs in favor of Plaintiffs.

### d)   Similarity of the Goods and Services Provided Under the Marks-at-Issue and Manner of Marketing

The greater the similarity between the products and services at issue, the greater the likelihood of confusion. *Heartsprings, Inc.*, 143 F.3d at 556 . Courts analyze this factor by separately considering the similarities between the products or services, and the similarities between the ways in which the parties market the products or services. *Sally Beauty*, 304 F.3d at 974. "Confusing similarity is most likely when the products themselves are very similar." *Beer Nuts*, 711 F.2d at 941. In addition, "[i]n analyzing the similarity in the manner of marketing, this court has previously considered whether the parties were competitors in consumer markets." *Sally Beauty*, 304 F.3d at 974.

Here, the goods and services provided by Plaintiffs and Defendants are closely related, if not identical. The parties both dispense regulated cannabis and cannabis-related

19

products. Also, the parties' market in much the same way, including the use of public-facing signage and social media platforms. Defendants' marketing materials are especially confusing: Defendants employ stylistic methods to deliberately minimize the phrase "Brandi & Barry" whenever used in concert with the DANK TANK mark.

Further, following the execution of the Purchase Agreement, Defendants became direct competitors with Plaintiffs, seeking to reach the same customer base through the same or similar commercial channels in the same market. Both compete for regulated cannabis consumers, at least, in or around El Reno, Oklahoma. Defendants opened Defendants' First El Reno Location less than two (2) miles from Plaintiffs' Original El Reno Location. Defendants' Second El Reno Location will be located less than a half-mile from Plaintiffs' Original El Reno Location. Because the parties advertise similar, if not identical, goods and services through similar manners of marketing and compete in the same market for the same customer-base, this factor also weighs in favor of Plaintiffs.

### e)   Degree of Care Exercised by Purchasers

"Buyers typically exercise little care in the selection of inexpensive items that may be purchased on impulse. Despite a lower degree of similarity, these items are more likely to be confused than expensive items which are chosen carefully." *Beer Nuts*, 711 F.2d at 941. Here, the cannabis products offered by both parties are fairly inexpensive. For instance, Defendants advertise various cannabis strains products at one of its dispensaries for prices ranging from $3.00 to $14.00.[2] Even assuming Defendants' products are costly

---

[2] Weedmaps, Dank Tank – Norman. https://weedmaps.com/dispensaries/dank-tank-norman (last visited Nov. 8, 2022).

20

relative to Plaintiffs', or other competing dispensaries, they are not so costly that a reasonable buyer would inherently exercise substantial care in purchasing them.

Here, one of the harms Plaintiffs seek to remedy is sponsorship confusion, including the loss of reputation and goodwill stemming from consumers' perceptions that Plaintiffs sponsor or are otherwise affiliated with the Defendants' dispensary operations. So, even if purchasers were to exercise a higher degree of care, the Tenth Circuit has noted that "this factor rarely reduces the risk of sponsorship confusion." *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1092 (10th Cir. 1999). Accordingly, this factor either favors Plaintiff, or is likely neutral.

### f)       Strength of the DANK TANK Mark

"To determine the relative strength of plaintiff's trademark, we place the mark in one of five categories of increasing distinctiveness and strength: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful." *Heartsprings, Inc.,*   143 F.3d at 555. A generic mark describes the relevant type or class of goods, while a descriptive mark describes a product or service characteristic. *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 654–55 (10th Cir. 1996). A suggestive mark suggests rather than describes a product characteristic and requires the customer to use imagination and perception to determine the product's nature. *Id.* Arbitrary and fanciful marks are the strongest. An arbitrary mark has a common meaning unrelated to the product for which it has been assigned, while a fanciful mark signifies nothing but the product. *Id.*

Plaintiffs' DANK TANK mark is, at worst, a suggestive mark. The term "dank" is often used to refer to something that is disagreeably damp and musty. High-quality

cannabis is characteristically moist and gives off a distinct, pungent aroma. As such, "dank" is admittedly used as a slang term for high-quality cannabis. However, the term "tank" is often used to denote an armored military vehicle. There is no relation between the common meaning of "tank" and Plaintiffs' goods and services. Although the Dank Tank Logo was inspired by a building that Mr. Post thought looked like a "tank"—the term "tank" is arbitrary to Plaintiffs' goods and services. The armored tank featured in the Dank Tank Logo underscores the military imagery arbitrary to Plaintiffs' goods and emphasizes the source-identifying nature of the DANK TANK mark. When combined, the terms "dank" and "tank" create a rhyming pattern resulting in a unique commercial impression separate and distinct from the slang term "dank." When the DANK TANK mark is applied to Plaintiffs' goods and services, imagination, thought, or perception is required to conclude the nature of Plaintiff's goods and services.

At the very least, Plaintiffs' DANK TANK mark is entitled to strong protection given its non-generic and non-descriptive nature, and due to Plaintiffs' continuous use and/or excusable nonuse of the DANK TANK mark in connection with the sale of regulated cannabis and cannabis-related products. The strength of the DANK TANK mark weighs strongly in Plaintiffs' favor.

In sum, Plaintiffs have a protectable interest in the DANK TANK mark and Defendants are using an identical mark in commerce that has caused and is likely to further cause consumer confusion. There is, therefore, a substantial likelihood that Plaintiffs will prevail on the merits of its common law trademark infringement claims.

### D.    Plaintiffs Will Be Irreparably Harmed If Defendants Are Not Enjoined

The requirement of irreparable injury may be satisfied if a plaintiff shows a significant risk of irreparable harm. *Greater Yellowstone v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003).

### 1.    Copyright Infringement Claim

Prior to the Supreme Court's holding in *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006), disapproving of the use of categorical rules in connection with injunctive relief in intellectual property actions, nearly every circuit in the country, including the Tenth Circuit, presumed the existence of irreparable harm once the plaintiff established a likelihood of success. *See, e.g., Country Kids*, *',* 77 F.3d at  1288 ("[w]e join the overwhelming majority of our sister circuits and recognize a presumption of injury at the preliminary injunction stage once a copyright infringement plaintiff has demonstrated a likelihood of success on the merits.")

Since *eBay*, however, the Tenth Circuit has declined to answer the question of whether a presumption still exists in copyright infringement cases. *See Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch,* 23 F.4th 1262, 1270 (10th Cir. 2022) (noting that "the Supreme Court cautioned against categorical rules that would undermine the traditional four-part test for preliminary injunctions in cases involving intellectual property."). Other circuits have, however, done away with the presumption of irreparable injury upon a showing of likelihood of success, in part, because such categorical presumptions are inconsistent with the holding in *eBay*. *See, e.g., CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 111-12 (1st Cir. 2008); *Salinger v. Colting*, 607 F.3d 68, 76 (2d Cir. 2010);

*TD Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019); *Bethesda Softworks, L.L.C. v. Interplay Entertainment Corp.*, 452 Fed. Appx. 351 (4th Cir. Oct. 26, 2011); *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012); *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979, 980 (9th Cir. 2011); *Peter Letterese and Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1323 (11th Cir. 2008); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).

Here, Plaintiffs have made a strong showing that they are likely to succeed on the merits of their copyright infringement claim, as discussed *supra*. To the extent that the Tenth Circuit continues to recognize a presumption of irreparable harm upon a showing of likelihood of success, Plaintiffs are eligible for such a presumption.

Nonetheless, even if Plaintiffs are not afforded a presumption of irreparable harm, Plaintiffs can establish that they have suffered, and will continue to suffer, irreparable injury unless an injunction is granted. Irreparable injury is established "when the court would be unable to grant an effective monetary remedy after full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc.*, 269 F.3d at 1156. The Tenth Circuit has identified several factors supporting irreparable harm determinations: inability to calculate damages, harm to goodwill, diminishment of competitive positions in the marketplace, loss of employees' unique services, the impact of state law, and lost opportunities to distribute unique products. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1263 (10th Cir. 2004).

Plaintiffs will suffer irreparable harm in at least the following forms: (1) loss of competitive edge and threats to business viability; (2) loss of goodwill, reputational harm,

24

and customer confusion regarding Defendants' affiliation with Plaintiffs; and (3) inference with customer relationships and eventual loss of customers. These intangible harms continue to mount daily and cannot be remedied by money damages. *Retiree, Inc. v. Anspach*, No. 12-2079-JAR, 2013 WL 3820729, at *6 (D. Kan. July 23, 2013), aff'd, 660 F. App'x 582 (10th Cir. 2016) ("Loss of customers, loss of goodwill, and threats to a business' viability have been found to constitute irreparable harm.")

Plaintiffs are in the business of providing regulated, medical cannabis to patients, a business which, by necessity, demands that special attention be paid to the unique medical needs of each of its patients. Accordingly, the goodwill garnered by Plaintiffs in providing quality, personalized guidance to its patients is a valuable commodity. The Tenth Circuit has weighed in on industries such as this: "One situation in which damages may not fully compensate a plaintiff is when the business at issue is based on personal contacts and a knowledge of the special needs and requirements of customers, a fact which complicates any damage estimate." *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (internal quotations omitted).

Further, Plaintiffs have been and will continue to be harmed by Defendants' use of the Infringing Work. The Copyrighted Work is a critical component of Plaintiffs' logo. As such, customers will continue to associate the Copyrighted Work with Plaintiffs, but will be receiving a customer experience from Defendants that Plaintiffs have no control over. Accordingly, Plaintiffs would lose control of its reputation; Plaintiffs' reputation can be tarnished by the negative reviews and press lodged at Defendants.

Plaintiffs will be irreparably harmed if this Court does not enjoin Defendants from infringing the Copyrighted Work. Defendants' conduct is an attempt to unfairly compete with Plaintiffs. Defendants seek to usurp Plaintiffs' identity for the purpose of deriving the benefits of the goodwill that Plaintiffs have garnered. These overt actions, taken deliberately to cause confusion in the marketplace, are causing injury to Plaintiffs' reputation and business which cannot easily be quantified or compensated financially. If Defendants are allowed to continue these bad acts, Plaintiffs substantially risk lost future profits, diminished business reputation, and weakened competitive market position.

## 2.      Common Law Trademark Infringement Claim

Plaintiffs also stand to suffer irreparable harm due to Defendants' continued infringement of the DANK TANK mark. Defendants' infringing use of the DANK TANK mark invariably threatens injury to the economic value, goodwill, and reputation of Plaintiffs' dispensary operations and its DANK TANK mark. Courts have held that where trademark infringement is alleged, "a showing of irreparable injury is made once the plaintiff establishes a likelihood of success on the merits." *CommunityCare HMO, Inc. v. MemberHealth, Inc.*, No. 06-CV-197-TCK-SAJ, 2006 WL 6130987, at *10 (N.D. Okla. May 8, 2006) (finding plaintiff was entitled to a TRO against defendant who, inter alia, infringed plaintiff's common law trademark). The *CommunityCare* court explained that "by its very nature, trademark infringement results in irreparable harm because 'the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated." *Id.*

As discussed, *supra*, Defendants' infringing use of the DANK TANK mark has caused and threatens to continue to cause confusion in the marketplace. Unless enjoined, Plaintiffs are at risk of losing control over its business reputation and associated goodwill, which cannot be satisfactorily quantified.

### 3.     Breach of Contract Claim

Plaintiffs also face irreparable harm due to Defendants' deliberate breach of the Purchase Agreement. In determining whether a movant faces irreparable harm, courts "[h]ave identified the following as factors supporting irreparable harm determinations: inability to calculate damages, harm to goodwill, diminishment of competitive positions in marketplace, loss of employees' unique services, the impact of state law, and lost opportunities to distribute unique products*." Dominion Video Satellite, Inc.*, 356 F.3d at 1263 (collecting cases).

Here, Defendants' breach of the Purchase Agreement includes the unauthorized use of the DANK TANK mark and associated logo, and also Defendants' conduct of making disparaging statements concerning Plaintiffs. The damages stemming from Defendants' breach are difficult to calculate, including the harm to Plaintiffs' reputation, goodwill, and competitive market position. *See id.* ("[t]he irreparable harm findings are based on such factors as the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position."); *see also CommunityCare.*, 2006 WL 6130987, at *10 (granting TRO for breach of a settlement agreement concerning trademark usage) ("Rather than suffer only financial loss, [plaintiff] will suffer similar loss of goodwill and reputation in the event the contract is breached.").

27

**E.      The Balance of Equities Favor Granting Plaintiffs Injunctive Relief**

In light of the irreparable harm that Plaintiffs have suffered, and will continue to suffer, without injunctive relief, the balance of equities clearly favors Plaintiffs. The issuance of the requested injunction will not cause Defendants to suffer significant business disruptions or expense. Defendants are free to continue to operate their various cannabis dispensaries—except that Defendants may not continue to promote those businesses using Plaintiffs' trademark or copyrighted material, and without making disparaging comments concerning Plaintiffs. The relief requested by Plaintiff is essentially limited to compelling Defendants to respect Plaintiffs' intellectual property and abide by the terms of a contract to which Defendants have already agreed.

Plaintiffs have invested substantial time, money, and resources to garner the goodwill of its customers. The damage to Plaintiffs' reputation and goodwill is irreparable and outweighs any possible harm Defendants might suffer from the granting of a temporary or preliminary injunction. Defendants' hardship, if any, would consist primarily, if not entirely, of lost sales from deceived customers derived as a result of Defendants' unauthorized use of Plaintiffs' intellectual property and through the publication of false and disparaging statements concerning Plaintiffs. Plaintiffs are not seeking to prevent Defendants from competing in the market, Plaintiffs simply request they do so fairly.

**F.      The Public Interest Is Best Served by Enjoining Defendants' Unlawful Conduct**

In copyright cases, the Tenth Circuit has held that the public interest factor "normally weighs in favor of the issuance of an injunction because the public interest is

28

the interest in upholding copyright protections." *Autoskill Inc. v. Nat'l Educ. Support Sys.,*

*Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993), overruled on other grounds by *TW Telecom*

*Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011). Similarly, "[t]he

concurrent use of a trademark where a likelihood of confusion exists damages the public

interest." *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, No. CIV-14-650-F, 2020 WL

2119831, at *2 (W.D. Okla. May 4, 2020) (citing *Citizens Financial Group, Inc. v. Citizens*

*Nat. Bank of Evans City*, 383 F.3d 110, 131 (3rd Cir. 2004). It is also in the public interest

to uphold contractual obligations. *See Textile Workers Union of Am. v. Lincoln Mills of*

*Ala.,* 353 U.S. 448, 510 (1957) ("Of course, that is merely the law under which every

American is guided. The sanctity of contracts must remain inviolate, and all parties to a

contract fully agreed upon, must be bound by the terms and provisions contained therein.")

(internal quotations omitted).  It is in the public interest to reduce misunderstanding and

conceit in the marketplace by upholding intellectual property rights and permitting both

consumers and merchants to maximize their own welfare. Here, the public's interest can

only be served by upholding Plaintiffs' intellectual property rights and enjoining

Defendants' infringing and disparaging conduct.

Plaintiffs have shown above that confusion already has occurred and is very likely

to continue to occur unless the Court immediately restrains and enjoins Defendants' further

use of Plaintiffs' intellectual property, and from making further disparaging comments

concerning Plaintiffs. Further, Defendants' conduct threatens to harm a potentially

vulnerable class of the public, particularly individuals who have been evaluated by medical

doctors and determined to have medical conditions treatable by medical cannabis products.

29

Thus, it is in the best interest of the public that the Court grant this request for injunctive relief.

## BOND

Given that the potential harm to Defendants is minimal should it be enjoined from use of the Copyrighted Work, the DANK TANK mark, the Dank Tank logo, and from making further disparaging statements concerning Plaintiffs, Plaintiffs should not be required to post security greater than $500.

## CONCLUSION

Based on the foregoing reasons, Plaintiffs respectfully request that this Motion for Temporary Restraining Order be GRANTED on the terms set forth in the attached proposed order.

Dated: November 23, 2022.  Respectfully submitted,


By:   /s/ *Evan W. Talley*
Evan W. Talley   (OBA No. 22923)
Elizabeth L. Isaac (OBA No. 31618)
**DUNLAP CODDING PC**
609 West Sheridan Ave.
Oklahoma City, OK 73102
Telephone:   (405) 607-8600
Facsimile:   (405) 607-8686
etalley@dunlapcodding.com
eisaac@dunlapcodding.com

**ATTORNEYS FOR PLAINTIFFS
MARK POST AND
MT DANK TANK LLC**